UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

GREEN BAY DIVISION

|  |  |  |
|---|---|---|
| ANDRE JEAN BAPTISTE, individually and on behalf of all persons similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 15-C-636 |
| GLK FOODS, LLC, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S MOTION FOR
## <u>DECLARATION OF A CLASS ACTION</u>

In accordance with the provisions of Rule 23 of the Federal Rules of Civil Procedure,

Plaintiff Andre Jean Baptiste hereby moves this Court for a determination that this action may be

maintained as a class action under subsection (b)(3) with respect to the claims set forth in Count I

of the Second Amended Complaint in this cause (Docket Entry 25-4).[1]    The Plaintiff seeks to

represent a class consisting of:

> All migrant agricultural workers, as defined by the Agricultural
> Worker Protection Act, who were furnished to GLK Foods, LLC by
> farm labor contractor Cabioch Bontemps, doing business as
> Kroprite Harvesting, Inc., for employment cutting, cleaning,
> trimming, coring, shredding, packing or otherwise handling
> cabbage at GLK Foods, LLC's Bear Creek, Wisconsin facility

---

[1] The Plaintiff's motion for leave to file a second amended complaint (Docket Entry 25) is
unopposed.

during 2011.

## INTRODUCTION

Defendant GLK Foods, LLC ("GLK Foods") is the largest sauerkraut producer in the world, processing more than 120,000 tons of raw cabbage into sauerkraut each year. *Jurado Jimenez.  Jurado Jimenez* Facts, pp. 1-2, ¶ 1.[2]  In order to process cabbage into sauerkraut, each head of raw cabbage must be cored and trimmed individually, a task known as trim-line work.  At GLK Foods' processing plant in Bear Creek, Wisconsin, trim-line work ordinarily occurs between August and November, a period referred to as the "cutting season."  *Jurado Jimenez* Facts, p. 2, ¶¶ 3-4.  During 2011, GLK Foods used from 50 to 100 trim-line workers during the "cutting season." *Jurado Jimenez* Facts, p.2, ¶ 5.

Because of a shortage of local labor, from 2003 through 2011, GLK Foods applied to import Mexican nationals as trim-line workers through the so-called H-2B program. *Jurado Jimenez* Facts, pp. 2-3, ¶¶ 6, 9.[3]  As a condition of obtaining permission to hire the H-2B workers, GLK Foods was required to offer at least the applicable prevailing wage, as determined by the

---

2 This case is closely related to the matter of *Jurado Jimenez v. GLK Foods, LLC*, Civil Action 12-cv-209 (E.D. Wis.), presently pending before the Court.   In this motion, the Plaintiff relies at times on GLK Foods' admissions in *Jurado Jimenez* in its Response to Plaintiffs' Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment (Docket Entry 126 in *Jurado Jimenez*).   Excerpts of the relevant portions of these admissions accompany this motion as Exhibit A.   Citations to these admissions are designated as "*Jurado Jimenez* facts," followed by the relevant page and paragraph numbers from the Response (Docket Entry 126 in *Jurado Jimenez*).

3 H-2B is the visa designation for foreign workers coming to the United States to perform temporary non-agricultural services or labor.   The name is derived from the statutory provision establishing such visas, 8 U.S.C. §1101(a)(15)(H)(ii)(b).   *See Louisiana Forestry Ass'n v. Sec'y of Labor*, 745 F.3d 653, 659 (3rd$^{d}$ Cir. 2014).

Case 1:15-cv-00636-WCG   Filed 09/30/15   Page 2 of 21   Document 26

United States Department of Labor. 20 C.F.R. §655.10(1)(3). For 2011, GLK Foods sought admission of 143 H-2B trim-line workers for employment from August 1 through November 15, 2011, and offered an hourly wage of $10.36, the prevailing wage for the occupation as determined by the United States Department of Labor, and $15.54 for overtime hours. Exhibit B, Items B and G(1); *Jurado Jimenez* Facts, p. 6, ¶23. GLK Foods' temporary labor certification application contained a declaration signed on behalf of GLK Foods by its then-human resource assistant Betty Miller stating that GLK "will pay the offered wage during the entire period of the approved labor certification." Exhibit B, Appendix B.1, Item 5.

Fearing the implementation of a proposed increase in the applicable prevailing wage, GLK Foods terminated all of its H-2B trim-line workers in late September, 2011, eight weeks into the 14-week employment period. *Jurado Jimenez* Facts, pp. 27-29, 34, ¶¶89, 96, 97 and 119. To replace the H-2B trim-line workers, GLK Foods hired a group of Haitian workers from Florida managed by labor contractor Cabioch Bontemps, operating as Kroprite Harvesting. *Jurado Jimenez* Facts, p. 26, ¶126. It cost GLK Foods $10.25 per hour to employ the members of Bontemps' crew, of which the workers were to receive $8.00 per hour. *Jurado Jimenez* Facts, p. 36, ¶127.

Plaintiff Andre Jean-Baptiste was one of the replacement workers furnished to GLK Foods by Bontemps. Exhibit C, Kroprite Harvesting payroll, filed in *Jurado Jimenez* as Docket Entry 117-79. He complains that he was paid less than the prevailing wage of $10.36 per hour ($15.54 for overtime hours). Second Amended Complaint (Docket Entry 25-4), at 10-11, ¶¶ 32-33. In addition, he alleges that during 2011, neither Bontemps nor Kroprite Harvesting was registered with the United States Department of Labor as a farm labor contractor. *Id.*, at 9, ¶29. Finally,

- 3 -

Plaintiff Jean-Baptiste contends that he and his fellow workers were not provided with wage statements with their weekly pay, that the payroll records relating to their work were inaccurate and that their earnings were never reported to the Social Security Administration. *Id.*, at 11-12, ¶¶ 34-37.

## ARGUMENT

A plaintiff seeking class certification must satisfy the four prerequisites of Rule 23(a) and then any one of the requirements under Rule 23(b). *Jurado Jimenez v. GLK* Foods, No. 12-C-209, 2014 WL 2515398 at *3 (E.D. Wis. June 4, 2014). While certification is proper only if these prerequisites are satisfied, Rule 23 "creates a categorical rule," affirmatively "entitling" any "plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). *See also Subedi v. Merchant*, No. 09-C-4525, 2010 WL 1978693 at *2 (N.D. Ill. May 17, 2010) ("satisfaction of [Rule 23] requirements…categorically entitle a plaintiff to pursue her claim as a class action"). As this Court observed in an earlier action involving GLK Foods, "[a]ssuming all four of the subsection [23] (a) requirements are present, a class should be certified where, among other conditions, …the common issue of law or fact predominate." *Jurado Jimenz*, 2009 WL 2515398 at *3.

Rule 23 is not "a mere pleading standard" and, accordingly, the court must conduct a "rigorous analysis" that may "entail some overlap with the merits of the plaintiff's underlying claim." *Id.*, at *4, citing *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2551 (2011). However, this rigorous analysis "is not a license to turn class certification proceedings

- 4 -

into a dress rehearsal for the trial on the merits." *Id.*; *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 811 (7th Cir. 2012). Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for a court to probe behind the pleadings before coming to rest on the certification question. *Schmidt v. Bassett Furniture Industries*, No. 08-C-1035, 2011 WL 67255 at *3 (E.D. Wis., Jan. 10, 2011). While it is not required to assume the truth of the matters as asserted by the plaintiff, the court at the certification stage should only resolve those factual disputes relevant to determining whether the Rule 23 requirements are satisfied. In doing so, the court should find the plaintiff has met his burden if he has established each disputed requirement by a preponderance of the evidence. *Jurado Jimenez*, 2009 WL 2515398 at *3.; *Bell v. PNC Bank, N.A.*, No. 14-3018, 2015 WL 5093052 at *9 (7th Cir., Aug. 31, 2015).

## I.   The requirements of Rule 23(a) are satisfied.

### A.   Numerosity and impracticability of joinder

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Impracticality refers not to the impossibility of joinder, but rather to difficulty or inconvenience. *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1013 (W.D. Mich. 1987) (plaintiff migrant farmworkers need only demonstrate that it is extremely inconvenient or difficult to join the members of the class). The practicality of joinder depends on many factors, including the size of the class, the ease of identifying class members and their addresses, the facility of making service on them if joined and their geographic dispersion.

- 5 -

*Jurado Jimenez*, 2014 WL 2515398 at *5; C. Wright, A, Miller and M. Kane, 7A *Federal Practice & Procedure*, §1762; H. Newberg & A. Conte, *Newberg on Class Actions* §3.6 (4th ed. 2002); *Silva-Arriaga v. Texas Express, Inc.*, 222 F.R.D. 684, 688 (M.D. Fla. 2004), citing *Kilgo v. Bowman Transportation, Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

No definite standard exists as to what size class satisfies the requirements of Rule 23(a). Schmidt, 2011 WL 67255 at *4. While Rule 23 does not identify a magic threshold number required to establish numerosity, permissive joinder is usually deemed impracticable where the class members number 40 or more. *Id.*; *Hill v. Butterworth*, 170 F.R.D. 509, 513 (N.D. Fla. 1997 (if the class has over 40 members, it almost always satisfies the numerosity requirements of Rule 23(a)(1)). In this case, there are least 51 class members. Exhibit C, Kroprite Harvesting payroll, filed in *Jurado Jimenez* as Docket Entry 117-79; Exhibit D, list of individuals whose names appear on Exhibit C.

A number of additional considerations support class certification in this case. Clearly, the relatively small size of the unpaid wages and damages makes individual suits economically infeasible. *Swanson v. American Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969). ("[t]o require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action."); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 158 (1974) (economic reality dictates class treatment where individual claims are only $70 each). Such concerns are particularly appropriate in instances such as the case at bar, where the class is comprised predominantly of indigents. *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164-65 (7th Cir. 1974).

In addition, the geographic dispersion of the members of the class makes joinder

- 6 -

impracticable. The class members are individuals who maintain their permanent residences outside of Wisconsin. In other cases involving migrant farmworkers, this Court and other district courts have recognized that such geographic dispersion makes joinder of all class members highly difficult, if not impossible. *Jurado Jimenez*, 2014 WL 2515398 at *5, *8; *Moreno-Espinosa v. J & J Ag Products, Inc.*, 247 F.R.D. 686, 688 (S.D. Fla. 2007); *Silva-Arriaga*, 222 F.R.D. at 688 (geographic dispersion of class of migrant citrus pickers makes joinder impractical); *Rodriguez by Rodriguez*, 672 F. Supp. at 1014 (fact that class consists of migrant workers scattered through a number of states makes joinder impracticable).

## B. Common questions of law and fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This means there must exist a common question or "questions of law or fact common to the class," based on common questions and likely to produce common answers. *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2550-51. In order to show commonality, a plaintiff must show that the class members all suffered the same injury. *Jurado Jimenez*, 2014 WL 2515398 at *6, citing *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012). This requirement is in the disjunctive and may be satisfied by a single common question of law or fact, provided that the claims depend upon a common contention that is capable of class-wide resolution. Class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim. The fact that the class members might require individualized relief or not share all questions in common does not preclude certification of a class. *Bell*, 2015 WL 5093052 at *10, *15.

- 7 -

The class-based claims under the AWPA in Count I of the Second Amended Complaint contain a number of common questions of law or fact that are central to the claims of each and every class member:

- The Plaintiff claims that GLK Foods violated the AWPA, 29 U.S.C. §1842, by engaging the services of Cabioch Bontemps to recruit, transport and furnish migrant agricultural workers without first ascertaining as to whether Bontemps was registered as a farm labor contractor with the United States Department of Labor. Second Amended Complaint (Docket Entry 25-4), at 8-9, ¶¶27-29. Bontemps' registration status, as determined from the records of the federal Department of Labor, will be determinative of this claim for each class member. In order to prevail, each class member will need to show that Bontemps was not properly registered in October and November, 2011. Conversely, if Bontemps was in fact properly registered, every class members' claim will fail.[4]

- The Plaintiff complains that he and the other members were paid only $8.00 per hour, and $12.00 per hour for overtime work, rather than the rates promised in GLK Foods' temporary labor certification application. Second Amended Complaint (Docket Entry 25-4), at 9, ¶32. GLK Foods has already stipulated to this fact, *Jurado Jimenez* Facts, p. 36, ¶127, and GLK Foods' time records also indicate that these same rates were paid to each class member. Exhibit C. It is a common legal

---

4 To the extent GLK Foods contends that it undertook reasonable steps to verify Bontemps' registration, or that Bontemps' activities in 2011 did not require him to register, these are legal issues common to each member of the putative class.

- 8 -

question as to each class member as to whether these rates were permissible, or whether GLK Foods was required to pay the class members the higher prevailing wage rate of $10.36 per hour.

- .The Plaintiff contends that Bontemps actually paid the class members even less than $8.00 per hour and to conceal these underpayments, Bontemps' payroll records under-reported the actual hours of work. Second Amended Complaint (Docket Entry 25-4), at 10-11, ¶¶33-35.   Accurate payroll records are essential in order to determine whether workers have been paid the proper amount for their work.  *Bertrand v. Jorden*, 672 F.Supp. 1417, 1425 (M.D. Fla. 1987); *Castillo v. Givens*, 704 F.2d 181, 198, n. 41 (5th Cir. 1983), *cert denied*, 464 U.S. 850 (1984); *Mendez v. Brady*, 618 F.Supp 579, 591 (W.D. Mich. 1985); *Bueno v. Mattner*, 633 F.Supp. 1446, 1452 (W.D. Mich. 1986), *aff'd*, 829 F.2d 1380 (6th Cir. 1987).   The Wisconsin Department of Workforce Development found this practice with regard to the entirety of Bontemps' crew. *Jurado Jimenez* Facts, p. 36-37, ¶128.[5]

---

5 It is not surprising that Bontemps chose to underreport the hours worked.   He was paid $10.25 for each hour worked by a member of his crew, from which he was to pay the individual workers their wages.   This allowed Bontemps virtually no profit for those weeks the crew worked substantial overtime hours, triggering the obligation to pay the overtime wage of $12.00 per hour, Bontemps stood to lose $1.75 for each overtime hour worked (the $12.00 overtime wage, less the $10.25 rate paid Bontemps by GLK Foods).   For example, during the workweek of October 9 to November 4, 2011, the Bontemps crew worked 4431.5 hours, including 2471.5 hours of overtime. For this work, Bontemps was paid $45,422.88 by GLK Foods at the agreed-upon rate of $10.25 per hour.   The crewmembers were due $45,388.00 for this work (1960 regular hours at $8 and 2471.5 overtime hours at $12). This left Bontemps with a net "profit" of $84.88, from which he was obligated to pay Social Security (FICA) taxes, as well as the costs of transporting the crew to and from the worksite on a daily basis.

- 9 -

- The Plaintiff also alleges that Bontemps failed to provide wage statements to the members of his crew as required by the AWPA, 29 U.S.C. §1821(d)(2) and 29 C.F.R. §500,80(d).   Second Amended Complaint (Docket Entry 25-4), at 11, ¶36. Wage statements of this sort permit workers to verify the correctness of their pay and to raise any concerns with the employer regarding the wages and how these wages were calculated.   In addition, these wage statements provide workers with a permanent record of their employment for purposes such as filing tax returns and applying for unemployment compensation benefits.   *Fanette v. Steven Davis Farms, LLC*, 28 F.Supp.3d 1243, 1261 (N.D. Fla. 2014); *Frenel v. The Freezeland Orchard Company, Inc.*, No. 87-278-A, 1987 WL 46894 at *3 (E.D.Va., December 24, 1987).   The Wisconsin Department of Workforce Development confirmed this violation for the entire season with respect to the Plaintiff and the other members of Bontemps' crew. *Jurado Jimenez* Facts, p. 36-37, ¶128,

- The Plaintiff alleges that Bontemps failed to report the wages of the crew to the Social Security Administration, thereby preventing these earnings from being reported to their individual Social Security earnings records.   Second Amended Complaint (Docket Entry 25-4), at 11-12, ¶37.   Failure to report farmworkers' earnings for Social Security purposes violates the AWPA's wage payment provisions.   *Fanette*, 28 F.Supp.3d at 1262;, *Elizondo v. Podgorniak,* 70 F.Supp.2d 758, 777 (E.D. Mich. 1999); *Saintida v. Tyre*, 783 F.Supp. 1368, 1372 (S.D. Fla. 1992).   The Wisconsin Department of Workforce Development found

- 10 -

that Bontemps deliberately failed to pay FICA taxes and report the class members'
wages to the Internal Revenue Service, and instead characterized each of the
workers as an independent contractor. *Jurado Jimenez* Facts, p. 36-37, ¶128;
Exhibit E (DWD e-mail, November 17, 2011), filed in *Jurado Jimenez* as Docket
Entry 117-80, p. 2.

### C. Typicality of Plaintiff's claims

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the
claims . . . of the class."     The claims of the class representative must have the same essential
characteristics as the claims of the class at large. *Jurado Jimenez*, 2014 WL 2515398 at *6, *9.
"Typicality" gauges whether the class representative's claim is so interrelated with those of the
absent class members so that "by pursuing her own interest," a class representative "will pursue
the class's as well."   H. Newberg & A. Conte, *Newberg on Class Actions* §3.6; *Powers v.
Stuart-James Co.*, 707 F.Supp. 499, 503 (M.D. Fla. 1989) ("The reasoning behind this
requirement is that where all interests are sufficiently parallel, all interests will enjoy vigorous
and full presentation."); C. Wright, A. Miller and M. Kane, 7A *Federal Practice & Procedure,* §
1764.   When a class representative's claims "arise[] from the same event or practice or course
of conduct that gives rise to the claims of other class members and his or her claims are based on
the same legal theory."   *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998).

Here, all class members share common claims under the AWPA with regard to their
employment on GLK Foods' operations during October and November, 2011.   GLK Foods
treated each member of the putative class in precisely the same fashion.    All of the class

members were recruited, furnished and transported by unregistered farm labor contractor

Cabioch Bontemps.    The same recordkeeping and statement practices applied to all members of

Bontemps' crew.    None of the class members' earnings at GLK Foods' processing facility were

reported to the Social Security Administration.    Accordingly, the legal theory pursued and the

proof offered to establish these violations will be identical for all class members.    *Chicago*

*Teachers Union, Local 1 v. Board of Educ. of City of Chicago*, 307 F.R.D. 475, 481 (N.D. Ill.

2015) ("A claim is typical if it arises from the same event or practice or course of conduct that

gives rise to the claims of other class members and her claims are based on the same legal theory");

*Moreno-Espinosa*, 247 F.R.D. at 690 (typicality requirement satisfied because "[i]n order to

prevail, plaintiff will have to establish the same facts under the same legal principles as those of

the other class members")[6]


### D.    Adequacy of protection of class interests

Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately protect the

interests of the class."    The adequacy requirements is directed at concerns about the competency

of class counsel and potential conflicts between the class representative and the other members

of the class.    *Jurado* Jimenez, 2014 WL 2515398 at *6.    A party's claim to representative

status is defeated only if the conflict between the representative and the class is a fundamental

---

[6]Factual variances between the individual class members do not render a claim atypical for purposes of Rule 23(a)(3). *Kornberg v. Carnival Cruise Lines*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("A factual variation will not render a class representative's claim atypical unless the factual position of the representative differs markedly from that of other members of the class); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640, 646 (M.D. Fla. 2012) ("Even if the fact patterns are unique to each claim, the typicality requirement will be satisfied if the class representative and class members experienced the same unlawful conduct")

- 12 -

one, going to the specific issues in controversy.   H. Newberg and A. Conte, *Newberg on Class Actions* §3.25; *Moreno-Espinosa,* 247 F.R.D. at 690.

The Plaintiff satisfies the adequacy requirements of Rule 23(a)(4).   His interests are in no way antagonistic to those of the other class members.   All of the class members will benefit from the relief sought by receiving damages for the AWPA violations and restitution of the additional wages due them.   The proposed class representative will not benefit in any way from actions that will prove harmful to the interests of the class members. *Jurado Jimenez*, 2014 WL 2515398 at *8 (adequacy requirements of Rule 23(a)(4) satisfied where "the class representatives are not subject to defenses that do not apply to the unnamed class members").

Plaintiff's counsel is competent to litigate this issue on behalf of the class.   He has litigated numerous actions under the AWPA on behalf of migrant and seasonal workers, many of which have been class actions.   *See, e.g.*, *Jean v. Torrese*, 278 F.R.D. 656 (S.D. Fla. 2011) (class action by bean pickers); *Silva-Arriaga* (class action); *Mesa v. Ag-Mart Produce, Inc.*, No. 2:07-cv-47, 2008 WL 2790224 (M.D. Fla., July 18, 2008) (class action); *Morante-Navarro v. T & Y Pine Straw, Inc.*, 350 F.3d 1163 (11th Cir. 2003); *Charles v. Burton*, 169 F.3d 1322 (11th Cir. 1999); *Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir. 1996) (class action).


## II.   The requirements of Rule 23(b)(3) are satisfied.

In order to have a class certified, the Plaintiff must not only satisfy Rule 23(a), but must also show that they meet one of the alternative requirements of Rule 23(b).   *Jurado Jimenez*, 2014 WL 2515398 at *7.   The Plaintiff seeks certification under Rule 23(b)(3), which requires the Court to find that the questions of law predominate over any questions affecting only

individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.* In considering whether this condition is met, the Court should consider four factors:

> (a) the class members' interest in individually controlling the prosecution of separate actions;
>
> (b) the extent and nature of any litigation concerning the controversy already begun by class members;
>
> (c) the desirability of undesirability of concentrating the litigation of the claims in this forum; and
>
> (d) the likely difficulties in managing a class action.

*Id.*

The Plaintiff's' AWPA claims in Count I meet the requirements for certification under Rule 23(b)(3).[7]

### A. The Common Questions of Fact and Law Predominate

In order for a matter to be certified under 23(b)(3), it is necessary that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." In assessing the justifications for the creation of Rule 23(b)(3) classes, the Supreme Court has observed:

> While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.... "The policy at the very core of the class action mechanism is to overcome the

---

[7]The requirements for certification under Rule 23(b)(3) are less stringent and less severe than those for certification under sections (b)(1) and (b)(2) of the Rule. H. Newberg and A. Conte, *Newberg on Class Actions* § 4.20.

> problem that small recoveries do not provide the incentive for any
> individual to bring a solo action prosecuting his or her rights.
> A class action solves this problem by aggregating the relatively paltry
> potential recoveries into something worth someone's (usually an
> attorney's) labor." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344
> (7th Cir.1997).

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

With respect to common issues, Rule 23(b)(3), by its plain terms, imposes a "far more demanding" inquiry into the common issues which serve as the basis for class certification. *Id.* at 623–24. While the inquiry may be more demanding, the Supreme Court has also instructed that Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds,* —— U.S. ——, 133 S.Ct. 1184, 1196 (2013) (original emphasis). Rather, all that is required is that a class plaintiff show that "common questions 'predominate.' " *Id.* (quoting Fed.R.Civ.P. 23(b)(3)). That is, "[i]ndividual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner v. Northshore Uni. HealthSystem,* 669 F.3d 802, 815 (7th Cir.2012). In this regard, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 139 (2d Cir.2001); *see also Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th Cir.2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

The class claims in this case predominate over any question affecting the individual members of the putative class. The Plaintiff seeks to remedy common legal grievances relating to

- 15 -

GLK Foods' payroll and wage payment practices over a six-week period in 2011.   A single

adjudication can resolve the issues raised by the class, because the violations alleged and the

evidence relating to them are identical for each class member.   Bontemps' registration status as a

farm labor contractor, or the lack thereof, was the same for every member of his crew.   The same

set of payroll records included the labor of all class members, and the class members' claims will

turn on the accuracy and completeness of this single set of documents.   All of the class members

were paid in a like fashion by Bontemps, with each of them being provided with the same sort of

wage statements (or lack thereof) and their wages being treated the same way for tax purposes.

Exhibit E.   With respect to each member of the Bontemps crew, the liability question is the same:

whether these practices, identical to each class member, violated the AWPA.   If Bontemps was

indeed an unregistered farm labor contractor during this period, he was in part because the entire

timekeeping system for the members of each subclass was uniform.     In prior cases, courts have

found the predominance requirements of Rule 23(b)(3) met when farmworkers have presented

similar claims under the AWPA:

> The AWPA violations set forth in the Complaint raise three
> separate issues: whether [the defendant] kept appropriate payroll
> records; whether the wage statements were adequate; and whether
> the Plaintiffs were paid for work they performed.   The Complaint
> alleges that these issues are common to all of the named plaintiffs
> and to the proposed class members as well.   The resolution of
> these issues will resolve each potential class member's underlying
> cause of action under the AWPA as well as the Florida Minimum
> Wage Act.   The Court determines that the Plaintiffs have shown
> that common questions of fact and law predominate over issues
> affecting individual members of the class.

*Mesa*, 2008 WL 2790224 at *10; *Jean*, 278 F.R.D. at 663 (predominance found when the

resolution of AWPA recordkeeping, wage statement and wage payment issues "will be exactly

- 16 -

the same for all members of the class" so that "the class legal issues subsume the individual ones and resolution of the class issues will resolve the individual issues.")

## B. A Class Action is Superior to Other Methods of Adjudication

For certification under Rule 23(b)(3), the Court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In making this determination, the Court is to focus on the four factors enumerated in Rule 23(b)(3): the interest of class members in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced, the desirability of having the litigation of the claims in the particular forum where it has been filed, and the difficulties likely to be encountered in management of the class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

With respect to the first factor, it is extremely unlikely that individual class members have any interest in instituting or controlling their own individual actions. Indeed, most of the class members, for various reasons, would probably be unable to bring their own actions. This is especially true given the class members' lack of proficiency in English, their indigent status, and the relatively small amount of individual recovery. This has been found to be the case in several class action claims brought by migrant workers. In the *Jean* case, also involving a class of Haitian farmworkers seeking relief under the AWPA, the district court observed "[g]iven that most of the class members are not proficient in English and are indigent, and that the individual recoveries will be relatively small, it seems unlikely that the class members would want to, much less could, control their own actions." 278 F.R.D. at 663. Other district courts have reached

the same conclusion in class actions brought by migrant farmworkers under the AWPA. *Silva-Arriaga*, 222 F.R.D. at 691 ("Given their limited English skills and limited understanding of the legal system, along with the fact that few live permanently within the Middle District of Florida, it is highly unlikely that the individual plaintiffs would pursue this litigation if class certification were not allowed"); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 289 (W.D. Mich. 2001) ("the interest in individual lawsuits is minimal in that the class mechanism allows class members for a more effective and far reaching remedy than would be available to them on an individual basis").

There have been no other lawsuits filed by members of the putative class raising the same issues as presented herein. Second Amended Complaint (Docket Entry 25-4) at 5, ¶17(c).

It is desirable to conduct this litigation in this forum. GLK Foods has admitted that this Court is the most desirable forum in which to litigate this action. Defendant GLK Foods, LLC's Motion to Dismiss (Docket Entry 9), at 9-10. *Figueroa-Cardona v. Sorrells Bro.s Packing Co., Inc.*, No. 2:05-cv-601, 2007 WL 672303 at *5 (M.D. Fla. Feb. 14, 2007) (the most favorable forum for litigating the claims is where the defendant and the relevant employment records are located); *Saur*, 203 F.R.D. at 289 (the district containing the defendant's farm is "the logical home for this suit.").

With respect to the final factor to be considered, although every class action presents administrative difficulties, the benefits of maintaining this action on a class basis far outweigh any administrative burdens. The principal concern in this regard is the process for determining the unpaid wages and damages due to each class member. However, the fact that the amount of damages in back wages due the individual workers must be determined does not preclude a

- 18 -

finding of predominance.     *See* H. Newberg and A. Conte *Newberg on Class Actions* §4.26; *Jean*, 278 F.R.D. at 664 (class treatment appropriate because no possible administrative issues have been identified and "resolving the legal issues in this matter as part of a class action would lead to economies of time, effort and expense"); *Silva-Arriaga*, 222 F.R.D. at 692 (in a case involving migrant lemon pickers, "no particular difficulties in managing the class action have been presented to the Court"); *Figueroa-Cardona*, 2007 WL 672303 at *5.   By contrast, as was noted in another case involving wage underpayment of farmworkers through use of falsified payroll records, "[t]he process of bringing individual actions would be much more difficult to maintain than a class action."   *Mesa*, 2008 WL 2790224 at *10; *see also Moreno-Espinosa*, 247 F.R.D. at 691 ("it would be far more administratively troublesome for the judicial system as a whole to treat each class member's claim as an individual lawsuit than to resolve this matter as a class action.")

Instructive in this regard is *De Leon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007).   In *De Leon-Granados*, the appeals court affirmed the district court's certification of a class of over 1500 migrant reforestation workers who contended, *inter alia*, that the defendants had violated the AWPA's recordkeeping, wage statement and wage payment provisions of the AWPA, the same provisions of that statute on which class certification is sought in this case.   The court of appeals noted that because the AWPA provides for the award of statutory damages as well as actual damages, it would not be necessary to determine individualized damages, thereby ensuring manageability under Rule 23(b)(3).   *De Leon-Granados*, 497 F.3d at 1221.   To the extent that the Court determines that computation of back wages due the putative class members in this case presents manageability concerns, *De Leon-Granados* suggests that

- 19 -

class certification may still be appropriate, with statutory damages awarded "where proof of actual damages is scarce."

## **CONCLUSION**

Based on the foregoing authority, the Court should grant the Plaintiff's' motion and permit this matter to proceed as a class action under Rule 23(b)(3) with respect to the claims set forth in Count I of the Second Amended Complaint.

Respectfully submitted,

*/s/ Gregory S. Schell*
Gregory S. Schell
Florida Bar Number 287199
MIGRANT FARMWORKER JUSTICE
    PROJECT
508 Lucerne Avenue
Lake Worth, Florida   33460-3819
Telephone:     (561) 582-3921
Facsimile:      (561) 582-4884
e-mail: Greg@Floridalegal.Org

Attorney for Plaintiff

- 20 -

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document will be served on counsel listed below

by CM/ECF on September 30, 2015:


Bradley S. Bell
BELL LAW GROUP, P.A.
407 N. Howard Avenue
Suite 201
Tampa, Florida    33606


Gregory B. Gill, Sr.
GILL & GILL, S.C.
128 North Durkee Street
Appleton, Wisconsin   54911


*/s/ Gregory S. Schell*
Gregory S. Schell

- 21 -